## [No. 1501.]
## ASHENFELTER v. WILLIAMS ET AL.

1. PARTNERSHIP—INSTRUCTIONS.
In an action against defendants as copartners where the fact of copartnership was established by a written agreement and the only other evidence bearing on the question was as to whether the contract had been abrogated by a subsequent oral agreement it was error for the court to instruct the jury as to what constituted a partnership with reference to a participation of profits.   The question of copartnership under the written contract was a question of law to be determined by the court and not by the jury.

2. SAME.
In an action against defendants as copartners where the copartnership was established by a written contract it was error to leave it to the jury to determine whether a subsequent modification changed the agreement or modified their relations or altered the responsibility of the parties.   This was a question of law for the court.   The

jury should have been told what in law would amount to an abrogation or rescission of the contract and if they found certain facts, which the court should have specified, then the contract was abrogated.

*Error to the District Court of Ouray County.*

Mr. T. W. EMERSON and Mr. THOMAS Y. BRADSHAW, for plaintiff in error.

Mr. LYMAN I. HENRY and Mr. CARL J. SIGFRID, for defendants in error.

BISSELL, J.

For the second time this controversy is before the court. So far, as we can discover it comes again on the same issue and on the same questions, and there can be but one result. We regard it as wholly inexpedient and unnecessary to review the entire case, or to restate the record except in those particulars wherein, if at all, there is any difference between what was exhibited at the last trial and on the first. The opinion in the first case, which is found in the 7th Colo. Appeals, 332, was rendered by the present president judge, and is a full, precise and accurate statement of the law applicable to this controversy, with which we have no differences, and accept it not only as the law, but as the law of the case. In that opinion will be found the contract which is the basis of the suit in so far as concerns Williams's liability. That contract was carefully examined and considered, and the court then concluded, and still thinks, that it was a contract of copartnership formed between the three parties signing it, in force and obligatory on them at the time of the rendition of the services by Ashenfelter. It appeared on the former trial and it appears now, that the first part of that agreement was never carried out. The parties wholly failed to ship the stipulated quantity of ore, and although the time was extended for ten days they still failed,

and afterwards went on with the performance of the second part of the agreement. This is a contract of copartnership pure and simple. The second-class ore that was mined by Young, Karns and Walsh was shipped to Williams, and by him milled under the terms of that engagement. The contract of copartnership was by its terms for a definite period and unless ended by the agreement of the parties it could not have otherwise been terminated *inter se,* nor as to third persons who dealt with the concern, whether with or without knowledge of Williams's connection. If the copartnership existed and Williams in law and in fact was a copartner, whoever dealt with the concern had a right to look to the copartnership as an entirety to enforce its obligation. On the second trial the learned judge very carefully observed the rulings of this court, shaped and directed the testimony to that end, and that only, and only erred when it came to the submission of the controversy to the jury in the instructions respecting the contract. As we look at it, an erroneous issue was submitted and one which there was no testimony to support. Ashenfelter asked an instruction substantially that the instrument which was introduced in evidence was a partnership contract and would make Williams a partner unless it was found that it was abrogated by a subsequent verbal agreement between the parties brought to the notice of the copartners and acquiesced in by them, and failing to find this substitution or abrogation they must find for the plaintiff against Williams. The instruction was perhaps not very happily worded, but in substance it was right and the plaintiff was entitled to have that, or one of like legal import, given to the jury. The court refused it, and then undertook to give an instruction as to what constituted a copartnership. This last instruction was misleading and must have confused the jury, because there was no question in the case as to what did or did not constitute a partnership with reference to a participation in the profits. The partnership was established by the written agreement. The only issue then remaining was of necessity its abrogation or

rescission. It was error to give that instruction. The third instruction was likewise erroneous, more by its lack of definiteness and the uncertainty of its statements than by reason perhaps of any cardinal error or vice inherent in it. The court told the jury that if they found " that during said period the operations of said mine in the extraction of second-class ores therefrom were carried on by the defendant and his codefendants, Young and Karns, or either of said defendants, or by said Williams and either of his codefendants under the second agreement embodied in the original agreement between these defendants relative to the operation of said mine in the extraction of second-class ores, or any subsequent modification thereof which did not change said agreement or modify the same relative to the payment of costs and expenses relative to the operations of said mine proportionately between the parties to said agreement, as by said agreement provided, then he is responsible," etc. The vice of the instruction was in leaving it to the jury to determine whether the subsequent modification changed the agreement or modified their relations or altered the responsibility of the parties. This was a question of law for the court and not a question of fact for the jury. The court should have told the jury what in law would have been enough to amount to a rescission or abrogation of the partnership agreement, and if they found certain facts, which the court should have specified, they must then find that the agreement had been abrogated and the defendant Williams was no longer responsible. The instruction, however, failed to state what the law was, point out the facts to which the law was applicable, and advise the jurors that on finding certain matters of fact in favor of the defendant, then the law was and would be that the copartnership agreement had been abandoned and the defendant was no longer responsible.

As we view it, the whole trouble was, that there was nothing in the record to which the instruction was applicable. It is quite true Williams did testify as follows:

" Q. What was said or done as to that part of the arrangement; anything said as to that?

" A. Yes, sir. I stated to Mr. Young that I was unwilling to assume the responsibility that would be laid upon me in that event; that I couldn't control any of the operations at the mine, entirely under his charge, would have nothing whatever to say in that regard, that I didn't want to assume any such responsibility."

He also testified:

" Q. What was to become of the written agreement which you hold before you there?

" A. That was to be laid aside; repudiated, by mutual consent of both of us."

So far as we are able to discover this is the only evidence in the record on which any finding could be predicated that there was an abrogation, abandonment, or a severance of the copartnership relation. This does not prove it. It is simply the conclusion of the witness and states no facts which in law would amount to an abrogation or a rescission. But beyond all this, it was clearly shown by the proof that Karns was not a consenting party and had neither knowledge nor information of Williams's attempted withdrawal. There is some little testimony given as to a conversation between Karns, Young and Williams on the street, but nothing which in legal effect would amount to a statement by Karns or by Williams that either one or both had withdrawn from the firm by agreement to dissolve it, or that either one or both was no longer to be held bound. The whole theory of abandonment by Williams is entirely destroyed in its effect and scope and to the extent claimed for it by his own testimony. He testified that he guaranteed a bill contracted by the firm as late as August and probably in September. He further testified that after it was agreed that the mill charges should be computed on a fixed basis, that he sold the concentrates, deposited the money to his own credit in the bank and checked it out on his own individual checks, paying the bills and expenses by the distribution of the fund resulting from the

reduction of the ore, which was in reality the subject-matter of the copartnership. He admitted that he was interested in the proceeds of the concentrates and that the less expenses he had to pay the greater was his profit. He told Downer, who went to collect Ashenfelter's bill for shipping the ore from the mine to the mill, that he would pay; that he was interested in the second-class ore, and at one time promised to pay a fixed sum of money in discharge of the obligation. Any one or all these things are a complete answer to the contention that the partnership was dissolved by reason of anything that was said or done between the parties. Whether any other or further effort will be made in this respect on the subsequent trial we cannot foresee. If the proof should be clearer and more satisfactory, or if the proposition respecting the acts of the copartners and their agreement to dissolve are plainly put to the jury and they should find that all the parties agreed the contract should not be binding between them, but that the business should be done on another and independent basis, a verdict based on a finding of those facts, under a proper statement of the rules of law respecting it, as they have already been laid down, and are herein expressed, might conclude the parties. This discussion of the situation, coupled with the former opinion seems to us an adequate disposition of this suit and in the light of these opinions the trial court will have no difficulty in submitting the cause to the jury whose verdict, if upheld by sufficient and competent proof, will be determinative of the issue.

There is another matter to which perhaps we should refer as it is made a subject of discussion in the briefs of counsel. After the judgment was rendered against the other members of the firm who were undoubtedly liable for the debt, a payment was made on the judgment amounting, as we read the record, to $350. The defendant offered to show this fact in reduction of the plaintiff's recovery. This was entirely legitimate and proper, and if the plaintiff had received any part or portion of the money to which he was entitled, the debt was certainly subject to that reduction. There is nothing in

the evidence to show that the circumstances were such as to amount to a release of the joint obligors, and as that question is not presented by the testimony, it is not a necessary subject of discussion.

For the errors apparent in the record as they have been discussed, this judgment must be reversed and the cause remanded.

*Reversed.*